The **LINCOLN PARK ZOOLOGICAL SOCIETY**, Petitioner, Cross–Respondent,

v.

**NATIONAL LABOR RELATIONS BOARD**, Respondent, Cross–Petitioner,

and.

**Public Service Employees Union, Local 46, Service Employees International Union, AFL–CIO, Intervenor–Respondent.**

Nos. 96–3594, 96–3922.

United States Court of Appeals, Seventh Circuit.

Argued April 14, 1997.

Decided June 12, 1997.

FLAUM, Circuit Judge.

When the Lincoln Park Zoological Society ("the Society") took over the operation of the Lincoln Park Zoo from the Chicago Park District, it refused to recognize Public Service Employees Union, Local 46 ("the Union") as the bargaining representative of the Zoo employees. The Union complained to the National Labor Relations Board ("NLRB"), which ordered the Society, as a successive employer, to recognize the Union as the exclusive bargaining representative of the employees. Deferring to the considered judgment of the NLRB, which found that the Union's historical relationship with the Zoo employees and its contractual relationship with the Park District were sufficient to prove that it represented a majority of the Zoo employees, we affirm the order of the NLRB.

## I.

On January 1, 1995, the Society, up to this point primarily a fund-raising organization, took over the operation of the Zoo from the Chicago Park District. The Zoo employs between 70 and 80 persons, who, prior to the shift in control, were part of the 2,500 employee Park District workforce, which was represented en masse by the Union. Because workers for the Park District are considered public sector employees, negotiations between the Park District and the Union are covered by the Illinois Public Labor Relations Act ("IPLRA"), 5 Ill. Comp. Stat. 315/1 et seq. (West 1997). The Park District has entered into successive collective bargaining agreements with the Union since at least 1984, the year in which the IPLRA became effective. When the Society, a private entity, assumed control of the Zoo, the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 et seq., became the law governing labor negotiations between the Zoo employees and management.

Subsequent to this shift in management, the Society refused to recognize the Union

Linzey D. Jones, Jr. (argued), Sonja L. Lengnick, Sidley & Austin, Chicago, IL, for Lincoln Park Zoological Society.

Elizabeth Kinney, National Labor Relations Board, Chicago, IL, Aileen A. Armstrong, David Seid (argued), Fred L. Cornnell, Jr., National Labor Relations Board, Appellate Court, Enforcement Litigation, Washington, DC, for National Labor Relations Board.

Joel A. D'Alba, Marvin Gittler, Asher, Gittler, Greenfield, Cohen & D'Alba, Chicago, IL, for Public Services Employees Union, Local 46, Service Employees International Union, AFL-CIO.

Before FLAUM, EASTERBROOK, and EVANS, Circuit Judges.

as the bargaining representative of the Zoo employees. Under the NLRB's successorship doctrine, if the new employer makes a conscious decision to maintain generally the same business and to hire a majority of its employees from its predecessor, the bargaining obligation of section 8(a)(5) of the NLRA to negotiate with the majority representative is activated. *See Fall River Dyeing & Finishing Corp. v. NLRB,* 482 U.S. 27, 37, 107 S.Ct. 2225, 2232–33, 96 L.Ed.2d 22 (1987); *NLRB v. Burns Int'l Sec. Servs.,* 406 U.S. 272, 278–79, 92 S.Ct. 1571, 1577–78, 32 L.Ed.2d 61 (1972); *NLRB v. Joe B. Foods, Inc.,* 953 F.2d 287, 292 (7th Cir.1992); *see also* 29 U.S.C. § 158(a)(5). Arguing that the Society is a successive employer and thus bound to negotiate with the Union, the Union filed a complaint with the NLRB. An administrative law judge ("ALJ") found that the Society indeed violated sections 8(a)(5) and (1) of the NLRA by refusing to recognize the Union as the exclusive bargaining representative of the employees of the Zoo. The NLRB affirmed the ALJ's findings and adopted the ALJ's order. The Society petitions this court for review; the NLRB cross-petitions for enforcement of its order; the Union has intervened as a respondent.

Perhaps because the Society hired at least 75 percent of the Zoo staff, it does not dispute on appeal the Board's finding that it is a successive employer to the Park District. What it does take issue with is the NLRB's recognition of the Union as a representative of the majority of the employees. The ALJ treated the question as a matter of course:

> The Union's representative status in this case is easily supported by established presumptions as well as statutory authority. Since at least 1984 the Union has been voluntarily recognized as the bargaining representative of the Zoo's employees, and that recognition has been embodied in successive bargaining agreements. The preamble to the latest agreement between the Chicago Park District and the Union contains a statement that the Park District

"is convinced that a substantial majority of the employees covered by this Agreement desire the Union to represent them for purposes of collective bargaining and contract administration." Indeed the Union's pre–1984 representative status was legislatively recognized by the State of Illinois in Section 9(c) of the IPLRA.[1] Moreover, since the IPLRA itself provides essentially the same safeguards as the National Labor Relations Act, the Zoo's employees had the same recourse to alter their representation as they would had they been covered under the National statute. There is, in any event, no record evidence that anyone sought to question the Union's majority status before the Respondent's takeover of the Zoo. In these circumstances, I find that the Union was the lawful bargaining agent of the Zoo employees at the time of takeover.

On appeal, the Society argues that the NLRB erred in extending comity to a bargaining representative who achieved its status under the IPLRA, as opposed to the NLRA. Moreover, petitioner argues that a showing of historical support cannot give rise to a presumption of majority support.

## II.

■ Deferential to the NLRB's expertise, we uphold the NLRB's conclusions of law unless "they are 'irrational or inconsistent with the Act.'" *Rock–Tenn Co. v. NLRB,* 69 F.3d 803, 807 (7th Cir.1995) (quoting *U.S. Marine Corp. v. NLRB,* 944 F.2d 1305, 1314 (7th Cir.1991)). We review the NLRB's findings of fact and inferences drawn therefrom for substantial evidence. *Joe B. Foods,* 953 F.2d at 291. Here, we are asked to review the NLRB's construction and application of the successorship doctrine, and thus invoke both standards of review.

■ Generally, a successor employer is obliged to bargain with a union that represented the employees of its predecessor if it carries on the newly acquired business in

---

1. Section 9(c) reads: "Nothing in this Act shall interfere with or negate the current representation rights or patterns and practices of labor organizations which have historically represented public employees for the purpose of collective bargaining ... unless a majority of employees so represented express a contrary desire pursuant to the procedures set forth in this Act." 5 Ill. Comp. Stat. 315/9(c) (West 1997). Public employees may petition the Board for decertification of a bargaining representative pursuant to section 9, which empowers the Board to hold an election to determine majority representation. *See* 5 Ill. Comp. Stat. 315/9 (West 1997).

substantially the same manner as its predecessor and hires a majority of its employees from the predecessor. *See Burns,* 406 U.S. at 278–79, 92 S.Ct. at 1577–78. In assessing whether a new employer qualifies as a successor, courts generally look at the totality of the circumstances. *See Fall River Dyeing,* 482 U.S. at 43, 107 S.Ct. at 2236; *Joe B. Foods,* 953 F.2d at 291. As explained above, the Society does not challenge its status as successive employer, but the Union's status as majority representative. In *Fall River Dyeing,* the Supreme Court held that when a union has been certified as a majority representative pursuant to the NLRA, it possesses a rebuttable presumption of majority status in a successorship situation. 482 U.S. at 38, 107 S.Ct. at 2233 (extending analysis of *Burns* beyond facts of that case). The hitch in extending a rebuttable presumption in the instant case is that we do not have before us a NLRB certified union, but rather a union whose bargaining status was cemented by and maintained under the IPLRA.

▇▇ Under the NLRA, a binding bargaining relationship may be established between a employer and a labor union by one of two methods: NLRB certification pursuant to an election or voluntary recognition of the union by the employer. *See Exxel/Atmos, Inc. v. NLRB,* 28 F.3d 1243, 1246 (D.C.Cir. 1994); *NLRB v. Lyon & Ryan Ford, Inc.,* 647 F.2d 745, 750 (7th Cir.1981). Once an employer has recognized a union, it may not displace the union as majority representative through an election or by other means, but must bargain with that union. *See Lyon & Ryan Ford,* 647 F.2d at 751. In the instant case, the NLRB contends that the Union has been voluntarily recognized by the Park District since 1984, and therefore is deserving of protection afforded by the rebuttable presumption in this transition period between employers. This argument is more easily understood if reduced to two distinct inquiries.

▇▇ First, we must consider whether the rebuttable presumption of majority status is applicable where there is no certification, but only voluntary recognition. Mindful of our deferential posture towards the NLRB, which reached this result "easily," we conclude that voluntary recognition does indeed establish this presumption. That the successorship doctrine applies to instances of voluntary recognition is a position that has been endorsed and enforced for some time now by the NLRB, which must be shown to be at odds with the NLRA or irrational to be reversed. *See, e.g., JMM Operational Services,* 316 N.L.R.B. 6 (1995), 1995 WL 25493, at \*11; *Saks & Company,* 247 N.L.R.B. 1047, 1051 (1980), 1980 WL 11139, at \*7; *Virginia Sportswear, Inc.,* 226 N.L.R.B. 1296 (1976), 1976 WL 7591, at \*8. In *Fall River Dyeing,* the Supreme Court elaborated on the policy reasons behind the successorship doctrine: the NLRA seeks to achieve "industrial peace"; by maintaining stability in the administration of collective bargaining agreements and curbing the temptation to avoid good faith bargaining through delay, the successorship doctrine is in accord with the NLRA. *See* 482 U.S. at 38, 107 S.Ct. at 2233. Because attributing majority status to a certified union reinforces this stability sought by the NLRA, the Supreme Court accepted the NLRB's presumption. Here, crediting a union that has been voluntarily recognized by the predecessor employer with majority status would have this same steadying effect and thus be consistent with the NLRA. Accordingly, we hold that voluntary recognition can give rise to a rebuttable presumption of majority status in a successorship situation.

▇▇ Next, we must consider whether the historical and contractual relationship between the Park District and the Union under the IPLRA is consistent with the federal concept of voluntary recognition. Implicit in the process of voluntary recognition are protections for both employer and employee. First, in an instance of voluntary recognition it is presumed that the employer will always have an initial chance to refuse to recognize a union. Second, at the time of voluntary recognition, there is generally some showing of majority support, short of an election, by the employees (e.g., a majority card showing). *See Exxel/Atmos,* 28 F.3d at 1245; *Lyon & Ryan Ford,* 647 F.2d at 751. Here, we do not know much about the origins of the Park District–Union relationship. The record does inform us that pursuant to section 9(c) of the IPLRA, which extended comity to pre-

existing union/employer relationships, the Park District and Union's relationship was formally recognized in 1984. If this statute had frozen the bargaining relationship, we would have cause to be concerned for both employer and employee. The Park District, however, in every collective bargaining agreement since 1984 has reaffirmed the Union's majority status.[2] And Park District employees were afforded the opportunity to petition for the Union's decertification under section 9 of the IPLRA, a provision whose protections they never invoked. Moreover, in the record there is nary a hint of dissatisfaction with the bargaining relationship on the part of either party. Accordingly, substantial evidence in the record exists to construe this bargaining relationship between Park District and the Union as a voluntary one under federal labor law standards.

Accordingly, the Union enjoys the rebuttable presumption that it is a representative of the majority of Zoo employees. The Society has presented no evidence to contradict this presumption. Therefore, by refusing to bargain with the Union, the Society is in violation of the bargaining obligations of the NLRA.

### III.

At oral argument, the Society's counsel emphasized the fact that this case involves a transition from a public to private employer,[3] which is an apt point regarding the realities of this situation: there is a readily apparent contrast between a large public employer such as the Park District and a relatively small private entity such as the Society. We know that in the transition the represented workforce was diminished by 97 percent. We recognize that hiring and firing policies, as well as pay and benefit packages, may be

different under a closely managed private entity. The Society may well have reasons to seek a reassessment of the Zoo employees' representation. The distinctions which can be drawn between the Society and the Park District, however, do not support the Society's challenge to the Union's majority status. Rather, given the posture of this case and NLRB doctrine, any opportunity for the Society to prevail was virtually foreclosed by its failure to appeal the NLRB's determination that it is a successive employer. Only by this avenue could this court have explored the ramifications of the public to private transition.

For the reasons articulated above, we AFFIRM the decision of the NLRB and order its enforcement.

---

**2.** Four contracts between the Park District and the Union contain the following identical language: "WHEREAS, the Union has traditionally represented District employees and the District is convinced that a substantial majority of the employees covered by this Agreement desire the Union to represent them for purposes of collective bargaining and contract administration matters."

**3.** Counsel appeared to be hinting that additional protections for the successor employer were warranted because of the potential political nature of the prior state-union relations. In doing so, petitioner's counsel relies on two NLRB decisions implicating the successorship doctrine in transitions from public to private ownership: *JMM Operational Servs., Inc.*, 316 N.L.R.B. 6 (1995),

1995 WL 25493, at *11, and *Allegheny General Hospital*, 230 N.L.R.B. 954 (1977), 1977 WL 8881, at *4 . These precedents do not aid the Society's case. In *JMM Operational*, the NLRB allowed that the signing of authorization cards by a majority of employees twenty years prior to the transfer of management was sufficient to establish the union as majority representative under a voluntary recognition analysis and held that the successorship doctrine applied. *Allegheny General Hospital*, which stands for proposition that the NLRB accords the same effect to elections and certification of state agencies as it does its own, if the state certification is consistent with federal notions of due process, is inapposite to the instant case which involves voluntary recognition, rather than certification.